## WOOD *v.* BOARD OF EDUCATION OF WASHINGTON COUNTY *et al.*

1. An officer vested with a discretionary power may, in a proper case, be compelled by mandamus to exercise such discretion. But the writ of mandamus does not lie to control the conduct of an officer vested with a discretion, in the exercise thereof, unless such exercise has been so capricious or arbitrary as to amount to a gross abuse.

2. At least ninety days before the election of a county school commissioner, all candidates for the position are required to be examined by the president of the county board, or by some one appointed by him or the board for that purpose, upon written or printed questions. All applicants standing the examination are required to make 85 per cent. before they shall be declared by the board to be eligible to hold the office; and it is the duty of the county board of education to declare those who fail to make the necessary per cent. ineligible.

3. In grading the examination papers, no exact method is prescribed for arriving at the valuation to be placed upon an answer to a question, unless it is perfect or an absolute failure. The matter of gradation of particular answers, and the determination of whether a candidate has made the necessary per cent., are left largely in the discretion of the board; and the exercise of such discretion will not be controlled by mandamus, unless it falls within the rule stated in the first headnote above.

4. The charge of the presiding judge was in general accord with the rulings above made. If there were any verbal inaccuracies, when taken in connection with the entire charge, they were not such as to furnish

ground for a new trial. Nor was there merit in the grounds of the motion for a new trial which set up that the judge had omitted to charge certain pertinent principles of law.

5. The evidence was not such as to require a finding in favor of the applicant for the writ of mandamus, and the jury having found in favor of the respondents, and the presiding judge having approved their finding, this court will not interfere.

MARCH 13, 1912.

Petition for mandamus. Before Judge Rawlings. Washington superior court. August 9, 1911.

Wade H. Wood applied for the writ of mandamus against the members of the board of education of Washington county. He alleged, in brief, as follows. He is a resident, citizen, and taxpayer of that county, and also has an interest in the office of county commissioner of education, commonly known as county school commissioner, being the person commissioned to hold office until the end of the present term, with the right to stand for election for another term. The county board of education has jurisdiction over the public-school system of the county. One of their official duties is to hold examinations of all candidates for the office of county school commissioner, at least ninety days before the day of the election. An examination was held by them on June 30, 1910. The petitioner and J. C. Harman stood the examination, both being candidates for the office of county school commissioner. The petitioner made more than 85 per cent., according to the true and correct grading, marking, and rating made by the board, and is eligible to hold the office. Harman failed to make 85 per cent. in the examination, according to the true and correct grading, marking, and rating made by the board, and he is therefore ineligible to hold the office. It is the official duty of the board to declare eligible any candidate who made 85 per cent. in the examination, and to declare ineligible any candidate who failed to make such per cent. At a meeting of the board the petitioner made a formal demand upon them to discharge their official duty by declaring him eligible and by declaring Harman ineligible to hold the office. The board failed and refused to declare Harman ineligible. It was prayed that they be required to do so by a writ of mandamus. By amendment it was alleged that Harman failed to make 85 per cent. in his examination, by the true and correct grading thereof, and that his papers and answers to the questions propounded were not of the value

of 85 per cent., and that "the result, if any, made by said board was incorrect, and arbitrarily made." ✳

The board of education answered, in brief, as follows: The examination was held, and both Wood and Harman passed it and made the required legal grading to render them eligible to hold the office of county school commissioner. The grading of the two examinations was set forth in detail, showing the average mark of Wood to be 94-9/11, and that of Harman to be 87-2/11. As the result of such examination and grading, the board declared both candidates to be eligible. They refuse to declare Harman ineligible, because he is eligible, and has been so declared. They deny that the grading was the exercise of an arbitrary decision, but say that it was the result of "careful, thoughtful, and intelligent consideration of the questions and answers, in an effort to arrive at the true valuation and merit of each and every question; that the results above set out represent its most conscientious finding without favor or prejudice to any party or parties."

The case was submitted to a jury, and a verdict was rendered in favor of the respondents. The applicant moved for a new trial, which was refused, and he excepted.

*J. J. Harris* and *A. R. Wright,* for plaintiff.

*E. W. Jordan, T. W. Evans,* and *W. M. Goodwin,* for defendants.

LUMPKIN, J. (After stating the foregoing facts.) It is declared by the code of this State that mandamus does not lie "to a public officer who has an absolute discretion to act or not, unless there is a gross abuse of such discretion; but it is not confined to the enforcement of mere ministerial duties." Civil Code (1910), § 5441. "Ordinarily the writ of mandamus is a remedy for official inaction. It does not lie to control the conduct of an officer vested with a discretion, except where the exercise of that discretion has been so capricious or arbitrary as to amount to a gross abuse." *City of Atlanta* v. *Wright,* 119 *Ga.* 207 (45 S. E. 994) ; *Patterson* v. *Taylor,* 98 *Ga.* 646 (25 S. E. 771) ; *Dale* v. *Barnett,* 105 *Ga.* 259 (31 S. E. 167).

At least ninety days before the day of election for county school commissioner, it is required by law that all candidates shall be examined by the president of the county board, or by some one appointed by him or the board for that purpose, upon written or printed questions, which shall be furnished to the board by the

State school commissioner. The general subjects to be covered by the examination are stated, and it is declared that "all applicants standing said examination shall be required to make 85 per cent. in said examination before they shall be declared eligible to hold the office of county school commissioner by said board of education. Those who fail to make the per cent. shall, by the board, be declared ineligible to hold said office of county school commissioner." No exact basis or method of grading the examination papers is prescribed. This is left, to a considerable extent, to the sound discretion of the board. Indeed it might be very difficult to prescribe by legislative enactment any exact system by which the answer to a given question should be graded. An applicant may answer the question partly correctly, and yet not entirely so. Shall his answer be rejected altogether, because not perfect? Or shall it be accepted as perfect, when it is not so? Or how can a legislature or a court declare, in such a case, the exact percentage which shall be allowed for the answer? Suppose that a problem in mathematics should be given, and the applicant should adopt the correct method of solution, and correctly pursue it throughout, except that in some final addition or division he should make a slight error, can a legislature, or a court, or a jury determine with precision how such an answer shall be graded, or what mark shall be placed upon it? Necessarily, a considerable latitude of discretion must be involved in such cases. Sometimes a question must be answered so categorically that the answer is essentially entirely right, or entirely wrong; but many questions are not of that character. A jury of the vicinage, though composed of "good men and true," and sworn a true verdict to make according to the evidence, might find no small difficulty in supervising the grading fixed upon the answers by the board and the declaration by them of the average mark which had been attained by the candidates.

Much evidence was introduced as to the manner in which a gradation of the examination papers had been reached, and as to whether the final declaration was correct. The charge of the court was in substantial accord with the law as above declared. There may have been some slight departure from perfect verbal accuracy, but there was nothing of such a character as to require a reversal. Courts and juries will not undertake to merely supervise and declare erroneous every discretionary decision of the board of education in

regard to an examination. We do not think that the evidence was of such a character as to require a finding that the board of education exercised their discretion so capriciously or arbitrarily as to amount to a gross abuse. Nor were any of the complaints made of excerpts from the charge of the court, or of omissions to charge certain things, such as to require a new trial.

*Judgment affirmed. All the Justices concur.*